**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No. 1:18-cv-

TOMRA SORTING, INC., a Colorado corporation,

        Plaintiff,

v.

LORING INDUSTRIES, INC.
JAMES TIMMER, an individual, and
ROSE TIMMER, an individual,

        Defendants.

---

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

---

Plaintiff Tomra Sorting, Inc. ("Tomra") brings this Complaint against Defendants Loring Industries, Inc. ("Loring Industries"), James Timmer, and Rose Timmer (collectively, "Defendants").

**NATURE OF THE ACTION**

1. This is an action to remedy and prevent further unfair competition by Defendant Loring Industries and its two principals, James Timmer and Rose Timmer. For many years, Loring Industries and the Timmers acted as manufacturer's representatives for Tomra, selling Tomra's products in a several-state geographic area and making hundreds of thousands of dollars per year for their sales efforts.

2. In that role as manufacturer's representatives, the Timmers developed and received confidential information and trade secrets, as detailed below, which were acknowledged and protected pursuant to the contract between Tomra and Loring Industries.

3. On or about February 9, 2018, James Timmer provided a six-month notice of the cancellation of Loring Industries' contract with Tomra. That contract prohibited Loring Industries from competing with Tomra during the contract term and also had a 12-month post-contract non-competition agreement.

4. On or about April 13, 2018, Loring Industries, through James Timmer, provided notice that Rose Timmer was no longer with Loring Industries, although she continued to communicate with Tomra through her Loring Industries email address.

5. Tomra has since learned from multiple customers in Loring Industries' territory that Rose Timmer has been visiting those customers and promoting the products of a competitor, Optimum Sorting.

6. Tomra has also learned that Rose Timmer, in March of 2018, set up a new company, "The Two Ten Group, LLC" in order to sell and market sorting products that compete directly with those offered by Tomra.

7. Plainly, the plan of the Timmers is to circumvent the non-competition agreement between Tomra and Loring Industries by rebranding "Loring Industries" as "The Two Ten Group, LLC" and immediately representing a competing manufacturer, relying on Tomra's confidential information and trade secrets to compete unfairly in the process.

8.  The Timmers and Loring Industries are alter egos of one another, such that the contractual restrictions on Loring Industries' unfair competition apply with equal force to the Timmers' activities on their own behalf or on behalf of the newly formed Two Ten Group, LLC.

9.  The Timmers and Loring Industries have breached their contract with Tomra and violated both the Colorado Uniform Trade Secrets Act ("CUTSA") and the federal Defend Trade Secrets Act ("DTSA"). This action is being pursued to remedy the violations and prevent Loring Industries' and the Timmers' continued misappropriation of Tomra's confidential information and trade secrets.

## PARTIES, VENUE, AND JURISDICTION

10. Plaintiff Tomra Sorting, Inc. is a Colorado corporation with headquarters in Sacramento, California.

11. Tomra, together with its Belgian parent company and its subsidiaries, is one of the world's leading manufacturers of sorting technologies for food (agricultural), mining, and recycling industries.

12. Defendant Loring Industries, Inc. is a Montana corporation with a principal place of business in Montana. James Timmer is the registered agent for Loring Industries.

13. On information and belief, throughout the relevant time period, Loring Industries has had no long-tenured, regular full-time employees other than James Timmer and Rose Timmer. Tomra believes that Loring may have had one or two short term employees several years ago.

14. Defendant James Timmer is an individual, who, Tomra is informed and believes, resides in Montana. On information and belief, James Timmer is the father of Defendant Rose Timmer.

15. Defendant Rose Timmer is an individual, who, Tomra is informed and believes, resides in Illinois but also maintains a residence in Montana.

16. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331, federal-question jurisdiction, as Plaintiff asserts a claim under the federal Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1836, 1839 (2017), against all Defendants.

17. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's state-law claims as their bases are derived from a core group of operative facts that also serves as the basis for Plaintiff's federal claim against Defendants.

18. James Timmer and Rose Timmer have traveled to Colorado many times during the relevant time period to visit Tomra's facility in the Denver metro area.

19. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the operative contract between Loring Industries and Tomra provides as follows:

> The Contract is governed by the Courts of Denver and the laws of Colorado, where the Manufacturer has his registered office.

Exhibit 1, at Article 36.

> The competent court of the place where the Manufacturer has his registered office shall have jurisdiction in any action arising out of this Contract.

Exhibit 1, at Article 37.

# FACTUAL BACKGROUND

## Loring Industries' Status as Tomra's Manufacturer's Agent

20. On or about January 1, 2011, Loring Industries entered into a Contract with Tomra's predecessor, Belgian Electronic Sorting Technology USA, Inc. ("BEST USA") to act as a manufacturer's agent, selling BEST USA's products in a fixed territory. That Contract is attached as Exhibit 1.

21. Tomra's parent company acquired BEST USA's parent company in 2012, resulting in the US entities being merged, and the combined US entity became Tomra Sorting, Inc.

22. The Contract is exclusive in that Loring Industries cannot represent competing manufacturers during the Contract term:

> In the Territory defined under Chapter I, the Agent shall not compete with the Manufacturer or assist others to compete with him. In particular, the Agent shall not manufacture products identical with, or similar to, the Products, nor shall he acquire an interest in any undertaking which competes with the Manufacturer in the Territory. Furthermore the Agent shall not market in the Territory defined under Chapter I any products, whether new or second-hand, which are identical with, or similar to, the Products.

Exhibit 1, at Article 7.

23. After termination of the Contract, Loring Industries is prohibited from competing with Tomra in the narrow industry in which Tomra operates for a period of 12 months:

> In case this contract is terminated either by the Manufacturer or by the Agent, the Agent undertakes not to sell, for a period of 12 months following termination of this Contract, Products from other producers and/or distributors of quality control and selection systems such as, but not limited to, sorting systems, x-ray systems, laser systems and camera systems, directly or indirectly, and not to

>be involved either in the sales by others of Products as referred to, directly or indirectly.

Exhibit 1, at Article 33.

24. The restrictions on competition in the Contract are reasonable in scope and duration.

25. In the Contract, Loring Industries also acknowledged and agreed that Tomra possesses Confidential Information:

>As used in this Contract, the term "Confidential Information" means:
>
>- proprietary information of the Manufacturer;
>
>- information marked or designated by the Manufacturer as confidential;
>
>- information, whether or not in written form and whether or not designated as confidential, which is known to the Agent as being treated by the Manufacturer as confidential;
>
>- information provided to the Manufacturer by third parties which the Manufacturer is obligated to keep confidential.
>
>Confidential information includes, but is not limited to know-how, customer lists, marketing plans, financial information, prospect lists and data base, development plans, business plans, project development plans, long range and strategic plans, budgets and compensation information, and all information, knowledge or data with respect to the design, development, manufacture, production, distribution or sale of products, devices, components, and systems and scientific or mechanical processes, methods, or operations therefore which are property of the Manufacturer or may be of significant industrial or commercial value to the Manufacturer, which the Agent has been informed about in connection with his representation.

Exhibit 1, at Article 43.

26. Loring Industries agreed to safeguard Tomra's Confidential Information during

and after the term of the Contract:

> The Agent acknowledges that all Confidential Information is and shall continue to be the exclusive property of the Manufacturer, whether or not prepared in whole or part by the Agent and whether or not disclosed to or entrusted to the Agent in connection with the representation of the Manufacturer.
>
> The Agent agrees not to disclose Confidential Information, directly or indirectly under any circumstances or by any means, to any third person without the express written consent of the Manufacturer.
>
> Upon termination of this Contract, the obligations set forth in this article will continue for a period of 12 months.

Exhibit 1, at Article 44.

### Tomra's Confidential Business Information and Trade Secrets

27. James and Rose Timmer, by virtue of their status as the principals of Loring Industries, are aware of some of Tomra's most valuable trade secrets. Indeed, for years, Tomra has provided them with the non-public information they need to effectively represent Tomra, all subject to the confidentiality protections of the Contract attached as Exhibit 1.

28. For instance, Defendants are aware of Tomra's pricing and discount structure. Tomra maintains "list prices" for the items it manufactures that are confidential; moreover, the most favorable discounted prices for which Tomra is willing to sell its products are highly confidential. Defendants, through their many years of work with Tomra, are aware of Tomra's pricing and maximum discounts.

29. Defendants also have intimate knowledge of Tomra's product portfolio. They know which Tomra products are the most reliable and which work best for a given application.

30. Defendants know the customers who have purchased Tomra's products in the territory they serviced on behalf of Tomra, the prospective customers Tomra is targeting, and the

specific individual contact at each customer and prospect who is responsible for decision-making with respect to large capital equipment of the type Tomra manufactures.

31. Defendants have knowledge of Tomra's product pipeline, including a new machine that is scheduled to launch within the next year (and when that product will launch). This machine is more advanced than other system on the market (in ways Defendants know by virtue of their relationship with Tomra), and it is expected to be the highest performing machine in the marketplace.

32. Defendants also are aware of new market segments, or lines of business representing new uses for Tomra machines, into which Tomra is entering.

33. Tomra carefully monitors and shares with Loring Industries other information critical to selling in the industry such as the products' value propositions and competitive advantages.

34. Tomra also monitors and shares with Loring Industries information regarding service calls (warrantied or otherwise) for its products.

35. Tomra maintains confidentiality with customers by entering into Non-Disclosure Agreements regarding the pricing of equipment it sells and other information relating to the relationship between Tomra, as the manufacturer, and its customers.

### Tomra's Sales Strategy and Pricing, Customer Lists, Products and Product Pipeline, and Future Target Market Segments Constitute Trade Secrets Within The Meaning Of The Federal DTSA And Colorado's UTSA

36. Tomra spent hundreds of thousands of dollars, if not more, to develop the confidential information and trade secrets described above.

37. Tomra safeguards its confidential information and trade secrets by sharing the information with employees only on a need-to-know basis, password protecting its computer systems, and requiring all of its employees who have access to Tomra's confidential information and trade secrets to enter into restrictive covenants that safeguard Tomra's information.

38. Tomra's confidential information and trade secrets are not known outside of Tomra, other than by a handful of manufacturer's agents like Loring Industries who signed agreements prohibiting the retention or unauthorized use of Tomra's confidential information.

39. Tomra's confidential information and trade secrets, along with its superior products, provide Tomra with a competitive advantage in the marketplace that drive U.S. sales, service, and rental charges of approximately $100 million per year.

40. Tomra's competitive advantage would be diminished if its confidential information and trade secrets were to be utilized by a competitor because a competitor would be able to capitalize on the value of the information without having had to incur the costs Tomra incurred in developing the trade secrets.

41. By way of example, a competitor could call decision-makers who are not otherwise known to them, at companies the competitor would not have known to call.

42. Similarly, by knowing Tomra's pricing structure, a competitor could seek to undercut Tomra's pricing in order to win business, or it could seek to drive Tomra's margins so low on every sale that Tomra could not realize a sustainable profit.

43. Likewise, by knowing Tomra's product pipeline, a competitor could get a head start on manufacturing a competing product and trying to engineer the mechanical advances that Tomra has spent years perfecting.

**Loring and the Timmers Have Engaged In An Extensive Pattern Of Conduct That Creates A Strong Inference That They Have Misappropriated, Or Threaten To Misappropriate, Tomra's Confidential Information And Trade Secrets**

44. James Timmer provided notice to Tomra that Rose Timmer was no longer associated with Loring Industries on or about April 13, 2018.

45. However, Rose Timmer continued to communicate with Tomra personnel, through her Loring Industries email, as late as May 1, 2018. As such, Tomra understands and believes that Rose Timmer continued to have unfettered access to Tomra's confidential information and trade secrets.

46. On information and belief, before May 1, 2018, Rose Timmer started to compete unfairly with Tomra.

47. For instance, on information and belief, Rose Timmer made visits to Tomra's customers accompanied by representatives of Optimum Sorting. During those visits, Rose Timmer has relied upon her knowledge of Tomra's products to try to convince at least one customer to purchase Optimum's products instead of Tomra's.

48. Rose Timmer established The Two Ten Group in March of 2018, on information and belief, for the purpose of competing with Tomra by selling products of one or more competing manufacturers.

49. On information and belief, James Timmer also plans to work with Rose Timmer at The Two Ten Group following the termination of Loring Industries' contract with Tomra.

50. On information and belief, James Timmer is not merely preparing to compete, but is actively engaged in the establishment of The Two Ten Group, to the detriment of Tomra.

51. Based on the totality of the Timmers' conduct, Tomra is informed and believes that they have misappropriated its confidential information and trade secrets.

### James Timmer and Rose Timmer are Alter Egos of Loring Industries

52. Tomra is informed and believes that Defendants James Timmer and Rose Timmer are the alter egos of Defendant Loring Industries, as well as The Two Ten Group.

53. Tomra is informed and believes there is a unity of interest and lack of respect given to the separate identities of Defendant Loring Industries, on the one hand, and the individual defendants, on the other.

54. Tomra is informed and believes that Defendant Loring Industries and The Two Ten Group are not operated as separate entities; that there has been comingling of funds and other assets amongst these entities and the individual defendants; that adequate corporate records have not been maintained; that legal formalities for the entities have not been maintained; that there are not arms-length relationships among the related entities and the individual defendants; that the various entities are undercapitalized; that corporate or entity funds or assets have been diverted to noncorporate or nonentity uses; that the individual defendants are the owners and/or

the individuals who control the various entities; and that the individual defendants use the entities as a shell or instrumentality of themselves.

55. Adherence to the legal fiction of the limited liability company of Defendant Loring Industries would result in fraud, promote injustice, and/or lead to an evasion of legal obligations.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract**
**(As to Defendants Loring Industries, Rose Timmer, and James Timmer)**

56. Tomra incorporates by reference its allegations in Paragraphs 1 through 55 above.

57. Tomra's predecessor, BEST USA, Inc. and Loring Industries entered into the Contract attached as Exhibit 1.

58. Tomra acquired BEST USA, Inc.

59. Tomra stands in the shoes of BEST USA, Inc. with respect to the Contract attached as Exhibit 1.

60. Defendants James Timmer and Rose Timmer, as the alter egos of Loring Industries, are bound by the competition restrictions contained in Articles 7 and 33 of the Contract attached as Exhibit 1, and the confidentiality obligations found in Articles 43 and 44 of the Contract.

61. Defendant Loring Industries (and its alter egos, James Timmer and Rose Timmer) received valuable consideration, including payments of hundreds of thousands of dollars per year.

62. Tomra fully performed all of its obligations under the Contract attached as Exhibit 1.

63.     Defendants breached Articles 43 and 44 of the Contract attached as Exhibit 1 by failing to safeguard Tomra's confidential information and trade secrets, and by instead relying on their knowledge of Tomra's confidential information and trade secrets to try to sell competing products.

64.     Defendants breached Articles 7 and 33 of the Contract attached as Exhibit 1 by actively competing with Tomra and by taking active steps to engage in further competition in the future.

65.     Tomra has been damaged as a direct and proximate result of each breach of contract by Defendants.

66.     Tomra is entitled to recover actual and consequential losses in an amount to be proven at trial as a result of Defendants' breach of contract, as well as costs, including witness fees, attorneys' fees, prejudgment and post-judgment interest, and other appropriate equitable and legal relief.

**SECOND CLAIM FOR RELIEF**
**Misappropriation of Trade Secrets Under The DTSA**
**(18 U.S.C. § 1836 *et seq.*)**
**(As to Defendants Loring Industries, Rose Timmer, and James Timmer)**

67.     Tomra incorporates by reference the allegations in Paragraphs 1 through 66 above.

68.     Tomra is the owner of the information described above. This information constitutes trade secrets within the meaning of 18 U.S.C. § 1839(3).

69.     Any of Tomra's trades secrets described above, in the hands of a competitor, would undermine Tomra's ability to compete in the marketplace.

70. Tomra has gone to great effort and expense to develop and maintain its trade secrets.

71. Defendants understood that Plaintiff's trade secrets would be made available to them to enable them to perform their responsibilities under the Contract attached as Exhibit 1, and they further understood their obligation to maintain the confidentiality of Tomra's trade secrets, and that Tomra had a legitimate business interest in keeping its information secret.

72. Tomra took reasonable and considerable efforts to maintain the confidentiality and secrecy of its trade secrets and confidential information as detailed above.

73. Defendants are in possession of Tomra's trade secrets, which were only made available to them under circumstances requiring that they maintain their secrecy.

74. The trade secret information misappropriated by Defendants has actual or potential independent economic value from not being generally known to the public or other persons who could obtain economic value from their disclosure or use.

75. As demonstrated by the conduct described above, Tomra is informed and believes that Defendants have misappropriated or threatened to misappropriate Tomra's trade secrets, and will continue to misappropriate or threaten to misappropriate Tomra's trade secrets (if not enjoined), for the purpose of using and exploiting them for his own interests, without license or permission from Tomra.

76. Defendants' actual or threatened misappropriation of Tomra's trade secrets is attended by circumstances of fraud, malice, or willful and wanton disregard of Tomra's rights.

77. Defendants' actual or threatened misappropriation of Tomra's trade secrets has caused and will continue to cause Tomra irreparable injury and damages unless Defendants are permanently enjoined by the Court, and Tomra has no adequate remedy at law.

78. Defendants' actual or threatened misappropriation of Tomra's trade secret information constitutes a breach of the Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1836 and 1839, entitling Tomra to relief.

### THIRD CLAIM FOR RELIEF
**Misappropriation of Trade Secrets under the CUTSA**
**(Colo. Rev. Stat. § 7-74-101 *et seq.*)**
**(As to Defendants Loring Industries, Rose Timmer, and James Timmer)**

79. Tomra incorporates by reference the allegations in Paragraphs 1 through 78 above.

80. Tomra is the owner of the information described above. This information constitutes trade secrets within the meaning of Section 7-74-102(4) of the Colorado Revised Statutes.

81. Any of Tomra's trade secrets described above, in the hands of a competitor, would undermine Tomra's ability to compete in the marketplace.

82. Tomra has gone to great effort and expense to develop and maintain its trade secrets.

83. Defendants understood that Plaintiff's trade secrets would be made available to them to enable them to perform their responsibilities under the Contract attached as Exhibit 1, and they further understood their obligation to maintain the confidentiality of Tomra's trade secrets, and that Tomra had a legitimate business interest in keeping its information secret.

84. Tomra took reasonable and considerable efforts to maintain the confidentiality and secrecy of its trade secrets and confidential information as detailed above.

85. Defendants are in possession of Tomra's trade secrets, which were only made available to them under circumstances requiring that they maintain their secrecy.

86. The trade secret information misappropriated by Defendants has actual or potential independent economic value from not being generally known to the public or other persons who could obtain economic value from their disclosure or use.

87. As demonstrated by the conduct described above, Tomra is informed and believes that Defendants have misappropriated or threatened to misappropriate Tomra's trade secrets, and will continue to misappropriate or threaten to misappropriate Tomra's trade secrets (if not enjoined), for the purpose of using and exploiting them for their own interests, without license or permission from Tomra.

88. Defendants' actual or threatened misappropriation of Tomra's trade secrets is attended by circumstances of fraud, malice, or willful and wanton disregard of Tomra's rights.

89. Defendants' actual or threatened misappropriation of Tomra's trade secrets has caused and will continue to cause Tomra irreparable injury and damages unless Defendants are permanently enjoined by the Court, and Tomra has no adequate remedy at law.

90. Defendants' misappropriation or threatened misappropriation of Plaintiff's trade secret information constitutes a breach of the CUTSA, Colorado Revised Statutes Sections 7-74-101 *et seq.*, entitling Tomra to relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

  A. That the Court enter a permanent injunction prohibiting Defendants from misappropriating, continuing to misappropriate, or threatening to continue to misappropriate, Plaintiff's trade secrets;

  B. That the Court enter a permanent injunction specifically enforcing the Contract attached as Exhibit 1 by enjoining all Defendants from "sell[ing] ... Products from other producers and/or distributors of quality control and selection systems such as, but not limited to, sorting systems, x-ray systems, laser systems and camera systems, directly or indirectly, and not to be involved either in the sales by others of Products as referred to, directly or indirectly";

  C. That the Court award Plaintiff compensatory and other monetary damages against Defendants, including the greater of (a) Tomra's lost profits and interest, or (b) Defendants' improperly gained profits, in an amount to be proven at trial, including (without limitation) the cost of litigation against Defendants made necessary by Defendants' wrongful acts;

  D. That the Court award Plaintiff its attorneys' fees and costs under 18 U.S.C. § 1836(b)(3)(D) and Colorado Revised Statutes §7-74-105;

  E. That the Court award two times the damages sought in paragraph B above under 1836(b)(3)(C); and

  F. That the Court award Plaintiffs such other relief as the Court deems appropriate.

Dated: June 5, 2018

*s/Josh Kirkpatrick*
Joshua B. Kirkpatrick
Littler Mendelson, P.C.
1900 16th Street, Suite 800
Denver, CO 80202
Telephone:  303.629.6200
Facsimile:  303.629.0200
jkirkpatrick@littler.com

**ATTORNEYS FOR PLAINTIFF**

Plaintiff Tomra Sorting, Inc.'s Address:
875 Embarcadero Drive
West Sacramento, CA 95605